UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD A. SCHWARZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-1004 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

# O R D E R

This matter is now before the Court on Plaintiff's Motion for Summary Reversal and the Commissioner's Motion to Affirm.  For the reasons set forth below, Plaintiff's Motion for Summary Reversal [#6] is DENIED, and the Commissioner's Motion to Affirm [#7] is GRANTED.

## BACKGROUND

Plaintiff, Edward Schwarz ("Schwarz"), was 46 years' old at the time of his administrative hearing.  (R18)  He did not complete high school but later obtained his GED. Id.  Schwarz is married and has children. (R26)  He lives with his wife and 23-year-old son. Id.  He was employed as a union painter until he was forced to take a disability pension in 2003.  (R19)

Following a motorcycle accident in 2004, Schwarz has experienced numbness and pain in the left side of his body, pain in his right shoulder, and constant ringing in his ears.  (R20-21) He stated that the pain keeps him from sleeping and has required him to take Vicodin for five years to

take the edge off; on a good night, he gets three hours of sleep.  (R21, R25, R29) Sitting still or laying back on his arm also causes his pain to worsen.  Id.  Riding in the car for long periods of time is hard on his neck and shoulder, but he was able to make the 100-mile trip to take his mother and wife to Chicago to see a play for Mother's Day.  (R22) Schwarz tries to help with the household chores but is told he doesn't do a good enough job.  Id.  Despite this, he still cooks dinner, does dishes, and vacuums the living room an average of once a week and occasionally mows the lawn on a riding mower.  (R22-23) He has problems gripping buttons/zippers, opening jars, turning pages and is not supposed to lift more than 25 pounds without taking the chance of re-injuring himself.  (R24) Schwarz describes his main limitations as lacking "the ability to work for a straight eight hours without having to sit and take breaks to allow the pain to settle down through my neck and shoulder."  (R30) He clarified that to be more comfortable, he needed to be standing more than sitting and that he could possibly do a job where he could stand most of the time.  (R32)

Schwarz estimates that at most, he can sit for 15-20 minutes before he needs to get up and walk to relieve pain.  (R25) He has difficulty remembering where he puts things and staying on task. (R26, R29) His wife or daughter generally do the grocery shopping, although he goes with them from time to time for something to do.  (R27) Schwarz also helps by doing two loads of laundry a week. Id.

On September 20, 2007, Schwarz applied for disability insurance benefits ("DIB"), alleging disability that began on August 28, 2007.[1]  His application was denied both initially and on reconsideration.  Schwarz requested a hearing before an administrative law judge ("ALJ").  A

---

[1] This date was chosen as a result of the issuance of a prior application for DIB being denied on the basis that Schwarz was not disabled through that date.

hearing was held before ALJ Timothy Mangrum on August 7, 2009, at which Schwarz, who was represented by counsel, and vocational expert ("VE") James E. Lanier appeared and gave testimony.

The ALJ posed a hypothetical question to the VE:

> Q: [L]et's assume we have a person of claimant's age, education, and work experience and we're going to limit to light exertional work, sir. I'm going to restrict to no climbing of ladders, ropes, or scaffolds. Reaching, let's see, reaching on the left limited to occasional and on the right to frequent, and the right being the dominant extremity. Overhead reaching –
>
> A: Reaching occasional?
>
> Q: On the left and frequent for the right.
>
> A: Yeah.
>
> Q: Overhead reaching limited to occasional bilaterally. Handling and fingering limited to frequent bilateral. Okay, with those limitations I'm assuming the person could not do the claimant's past work since they're both at medium.
>
> A: You're correct.
>
> Q: Would there be other jobs at those limitations a person could do?
>
> A: Okay, starting at light work order, O-R-D-E-R, caller, DOT number 20, excuse me, 209.667-014, SVP 2, light, Illinois 7,000; hand presser, DOT number 363.684-018, SVP 2, light, 6,000. Now I would like to give you a couple of sedentary.
>
> Q: All right, sir.
>
> A: Surveillance system monitor, DOT number 379.367-010, SVP 2, sedentary, 5,400; and polisher, eyeglass frames, DOT number 713.684-038, SVP 2, sedentary, 5,810.
>
> Q: All right, sir, just a moment. The jobs you just named what is the level of fine manipulation required for those jobs?
>
> A: When you say fine what –

>Q: Fingering basically.
>
>A: It's going to be frequent.
>
>Q: Frequent, okay. And those are all SVP of 2, so they are basically simple, routine?
>
>A: Right.
>
>Q: Okay.
>
>A: That can be learned within 30 days or short demonstration.
>
>Q: Okay, and let me ask how many breaks do employers normally tolerate during a shift for unskilled jobs?
>
>A: Three; 30 minutes to an hour for lunch, 15 to 20, 30-minute break two hours before lunch and two hours after lunch.
>
>Q: All right, so exceeding that number or duration would that cause a problem?
>
>A: If it's requested on a regular basis.
>
>Q: Okay. All right, Ms. O'Neill.

By Attorney:

>Q: So, if they ask for more than those three breaks on a regular basis it's your opinion that they would ultimately lose their employment?
>
>A: Correct.
>
>Q: And if the person had difficulties with concentration or pace such that they would be more than 10 percent off the industrial norm for that job would that cause the eprson to lose their employment as well?
>
>A: It is my opinion yes.
>
>Q: And if the person were to miss two or more days of work per month or leave work early two or [sic] days a month or more do you think that would, is it your opinion that would cause a person to also lose their employment?

   A: Yes.

(R34-36)

  On November 16, 2009, the ALJ issued his decision. (R42) The ALJ found that Schwarz has severe impairments that have been diagnosed as history of rotator cuff repair and degenerative disk disease of the cervical spine. (R46) The ALJ determined, however, that through his date last insured, Schwarz does not have an impairment or combination of impairments listed in or medically equal to one listed in 20 CFR Part 404, Subpart P, Appendix 1. Id.

  After considering the medical evidence in the record and relevant credibility factors as a whole, the ALJ found that Schwarz retained the residual functional capacity ("RFC") to perform light work except for climbing of ladders, ropes, or scaffolds, extremity and frequent reaching with the right upper extremity and limited to frequent handling of objects and gross manipulation and frequent fingering of both upper extremities. (R48) The ALJ concluded that his medically determinable impairments could reasonably be expected to produce pain and other alleged symptoms. Id. However, his assertions regarding the intensity, persistence, and limiting effects of the symptoms were found to be not credible to the extent that they are inconsistent with the RFC assessment. (R50)

  Past relevant work was excluded. (R52) Based on a consideration of his age, education, work experience, and residual functional capacity, the ALJ concluded that although Schwarz's ability to perform work on all exertional levels has been compromised by limitations, the testimony of the VE established that he was capable of making a successful adjustment to work that exists in significant numbers in the national economy and that he was not under a disability as defined under the Social Security Act at any time since his alleged onset in August 2007. Id.

Schwarz submitted a Request for Review of Hearing Decision. On October 1, 2010, the Appeals Council declined review of his claim, and the ALJ's decision became the final decision of the Commissioner. (R5-9) This appeal followed. The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

In order to be entitled to SSI and/or DIB, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966 (1986).

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed; (2) is the plaintiff's impairment "severe" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former

occupation; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. Garfield v. Schweiker, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. Tom v. Heckler, 779 F.2d 1250 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. Pugh v. Bowen, 870 F.2d 1271 (7th Cir. 1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580 (1986).

In his appeal, Schwarz argues that the vocational testimony was insufficient due to the failure of the ALJ to include all of his limitations in the hypothetical and consider certain of the VE's responses. The ALJ concluded that Schwarz was capable of performing jobs that exist in significant numbers in the national economy based on his residual functional capacity ("RFC"). Schwarz contends that this finding was in error, as the vocational testimony was flawed based on the ALJ's failure to include all of his limitations within the hypothetical question. Specifically, he challenges the ALJ's failure to credit the VE's opinion that he would not be able to sustain his employment if he needed to take an excessive number of breaks during his shift.

Following right rotator cuff repair surgery and physical therapy in 2002, Dr. Kenneth Renner concluded that Schwarz had regained full strength, had a good range of motion, and could return to work with possible modifications. (R259-60) In April 2003, Dr. Renner concluded that Schwarz's work as a painter was likely aggravating and re-tearing his rotator cuff. Id. Dr. Renner opined that Schwarz was partially disabled from the type of work that he had been doing, but that he could engage in other work activity with no overhead work or pushing/pulling over 25 pounds with his right shoulder. (R252, R259-60)

From there, Schwarz saw Dr. A.K. Roy, an orthopedic specialist, for his continued right shoulder pain. Although in May 2003 Schwarz reported that he could not perform his job as a painter due to his shoulder pain, he stated that he was still able to do housework, drive, and be fairly independent. (R248) Following an examination, Dr. Roy concluded that no active orthopedic treatment was needed at that time, other than possible treatment with anti-inflammatories and a work rehab program. (R249) Consistent with Dr. Renner's opinion, Dr. Roy noted that he believed Schwarz would be able to do light over-head work and other jobs not

requiring considerable overhead use of his right arm or throwing or lifting over his shoulder; although he could do some painting, he could no longer carry five gallon buckets.  Id.

In June 2003, Dr. Renner completed a union disability claim form on behalf of Schwarz in which he indicated that Schwarz was permanently unable to return to his prior work as a union painter.  (R251) A right shoulder arthrogram in July 2003 revealed no evidence of a re-tearing of his rotator cuff or leakage .  (R253)  Dr. Renner recommended that Schwarz abide by complete and permanent modifications of his work activity to prevent reinjury to his shoulder.  (R258)

In September 2004, Schwarz was injured in a motorcycle accident, suffering a right-side head contusion and fractures to the left clavicle and ribs.  (R264) Surgery was not recommended, and he was treated with a sling and medication including Vicodin, Ultram, Darvocet and Ibuprofen at various times.  (R264, R314-15)

On December 13, 2004, Schwarz was evaluated by Dr. Gregorio Manabat.  His chief complaint was that he was unable to work due to his inability to lift more than 25 pounds and difficulty doing overhead work with his painting job.  (R319) He reported taking only Stratera for his nerves and Elavil to help him sleep; no pain medications were noted.  (R320) Schwarz stated that he was able to carry 25 pounds and could walk up to 1-2 miles with no problem.  Id.  Dr. Manabat observed no headaches, normal vision/hearing, normal reflexes, no weakness, no numbness, no atrophy, no parasthesia, no limitation on motion, and no pain.  (R320-21) The diagnosis at that time was arthritis of the right shoulder post rotator cuff repair, anxiety, and insomnia.  (R322)

Later that month, Schwarz's RFC was assessed by Dr. Stanley Burris, a state agency physician.  Based on his review, Dr. Burris concluded that Schwarz had the RFC to occasionally

lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for about six hours in an eight hour day, sit with normal breaks for about six hours in an eight hour day, and pull and/or push without additional limitation. (R324) The only postural limitation found was an occasional ability to climb with ladders/ropes/scaffolds, and the only manipulative limitation was his ability to reach overhead; there were no visual, communicative, or environmental limitations noted. (R325-27) Dr. Burris opined that given these findings, Schwarz retained the ability to perform light work with restrictions on his ability to work overhead. (R330)

In March 2005, Dr. Henry Rohs completed another state agency review of Schwarz's RFC. Dr. Rohs opinion was substantially similar to the opinion of Dr. Burris, with the exception that Dr. Rohs made no finding with respect to Schwarz's ability to sit with normal breaks and found no postural or manipulative limitations. (R332-35) Dr. Rohs recommended that Schwarz continue range of motion exercises and found that he could perform light work. (R338)

Schwarz was next seen by Dr. Ji Li, a pain specialist, in October 2006. Dr. Li noted Schwarz representations that he had not had any symptoms in his neck or shoulder prior to the motorcycle accident, and that following the accident, his pain was primarily located on his left side. (R351) Testing revealed mild left cervical radiculopathy and paracervical myopathy, as well as a compressed disc at C5-6 and C6-7 accompanied by cervical facet arthrosis. Id. Examination showed no acute pain or distress, slight decreased range of motion of the left shoulder, marked tenderness at the left cervical muscles, cervical facet joint, and shoulder. (R352) Dr. Li concluded that Schwarz's pain was consistent with cervical discogenic pain, whiplash injury and cervical facet pain along with myofascial pain and prescribed Vicodin and Ultram. (R339-41, R352) Dr. Li also administered cervical epidural steroid injections on

October 30, 2006, and January 15, 2007, and February 28, 2007, as well as a medical branch nerve block on April 11, 2007.  (R347-50) Dr. Li prescribed physical therapy, but Schwarz quit after attending three sessions.  (R409)

In October 2007, Dr. Emilio Nardone, a neurologist, examined Schwarz following his complaints of left neck and arm pain.  An updated MRI showed no significant change in his cervical spine since August 2006.  (R354, R360) Dr. Nardone diagnosed cervical degenerative disc disease without cord or nerve root compromise.  (R361)

State agency physician Dr. Delano Zimmerman evaluated Schwarz's RFC on November 7, 2007.  Dr. Zimmerman found that he had the ability to occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for about six hours in an eight hour day, sit with normal breaks for about six hours in an eight hour day, and pull and/or push without additional limitation.  (R366) With the exception of a manipulative limitation on reaching in all directions, Dr. Zimmerman noted no other limitations.  (R367-69)

The severity and extent of Schwarz's self-reported limitations is not reflected in the objective medical findings of the various treating physicians, posing a conflict in the evidence.  It is the province of the ALJ to resolve evidentiary conflicts.  Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 542 (7th Cir. 1992); Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)."  Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987).  The existence of an evidentiary dispute is not grounds for reversing the ALJ's decision to credit one version of facts over another.  Herr v. Sullivan, 912 F.2d 178, 181 n.4 (7th Cir. 1990)

However, the ALJ must explain with particularity the basis of his decision. Young v. Secretary of Health and Human Services, 957 F.2d 386, 393 (7th Cir. 1992).

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight so long as it is supported by medical findings and consistent with substantial evidence in the record. Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008), *citing* Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004). The weight to be afforded to the treating physician's opinion depends on consideration of several factors: (1) the length, nature, and extent of the physician and claimant's treatment relationship; (2) whether the physician supported his or her opinions with sufficient explanations and medical findings; (3) and whether the physician specializes in the medical conditions at issue; and (4) the degree of consistency between the opinion and other evidence in the record. Id.; 20 CFR § 404.1527(d). "If the ALJ discounts the physician's opinion after considering these factors, we must allow that decision to stand so long as the ALJ 'minimally articulate[d]' his reasons – a very deferential standard that we have, in fact, deemed lax." Id., *quoting* Berger v. Astrue, 5165 F.3d 539, 545 (7th Cir. 2008).

Here, the ALJ methodically considered and largely credited the opinions of the treating physicians from both before and after his 2004 motorcycle accident, all of which agreed that he was capable of performing a limited range of light work. Schwarz does not specifically dispute these findings, but rather contends that the ALJ erred by not including his subjective claim that he needed an excessive number of breaks during an eight hour day in the hypothetical question.

It was completely proper for the ALJ to omit from the hypothetical any limitations based on statements by Schwarz which the ALJ found to be not fully credible, entitled to little weight in light of a lack of medical support in the record as a whole, or the unsupported arguments of his

attorney. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 540 (7th Cir. 1992). Because substantial evidence supports the ALJ's residual functional capacity finding, his hypothetical question which included the same limitations was appropriate. "All that is required is that the hypothetical question be supported by the medical evidence in the record" and "build an accurate and logical bridge between the evidence and his conclusion." Meredith v. Bowen, 833 F.2d 650, 654 (7th Cir. 1987); Cass v. Shalala, 8 F.3d 552, 555-56 (7th Cir. 1993); Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ's opinion more than meets this standard.

This is not a case where medical records were insufficient or incomplete, which could necessitate further development of the record. Rather, the medical records simply failed to compel the conclusion that Schwarz was disabled within the meaning of the Act at the time relevant to this application. Accordingly, the Court must conclude that the ALJ's determination was supported by substantial evidence.

**CONCLUSION**

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment [#6] is DENIED, and the Commissioner's Motion to Affirm [#7] is GRANTED. This matter is now terminated.

ENTERED this 9th day of January, 2012.

    s/ James E. Shadid
    James E. Shadid
    United States District Judge